# Stern's Appeal.

1. An administrator permitted the business, in which the decedent had been a partner, to be carried on by the surviving partner, and the result was a profit and increase in value of the firm assets. When the business was finally closed and the real and personal property sold, the firm was found to be insolvent. It appeared also that the firm was in fact insolvent at the time of the decedent's death. There was no property of the decedent other than his interest in the firm : *Held*, that there was no reason for surcharging the administrator, he not having adventured or lost in the business any estate, real or personal, of the decedent

2. The administrator was properly allowed credit for expenses of administration and $100 for services.

October 21st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Venango county:* Of October and November Term 1880, No. 82.

Appeal of Joseph Stern, administrator of Solomon Stern, deceased, from the decree of the court upon the report of the auditor appointed by the court to report upon the exceptions to the account of said administrator.

The facts are stated in the opinion of this court.

*C. Heydrick,* for appellant.

*McCloskey* and *Dodd & Lee,* for appellee.

Mr. Justice GREEN delivered the opinion of the court, November 8th 1880.

The appellant is the administrator of Solomon Stern, his deceased brother. Upon filing his account, it was referred to an auditor who, after hearing considerable testimony which is not returned to this court, surcharged him, apparently, but not certainly, with the sum of $1681.98. The Orphans' Court, however, have, by their decree, fixed that sum as the measure of the surcharge, directing that of that amount $856.98 be presently payable, the remainder to be accounted for hereafter. The accountant has appealed to this court upon assignments of error which call in question the entire surcharge.

The facts as found by the auditor disclose that prior to April 9th 1873, Solomon Stern, the decedent, and Philip Worst were engaged as partners in the brewing business at Franklin, Pa. Solomon Stern died on April 9th 1873, and letters were granted to the accountant about July 22d 1873. The business of the firm of Stern & Worst was carried on in the same name until about April 1876, by Philip Worst, the surviving partner. The decedent left a widow and two minor children, who had for their guardian their mother's father, A. Lehman. The firm had borrowed

$3000 from Lehman at the time they engaged in business in 1870, and they still owed him this money at the time of Solomon Stern's death.   The auditor finds as a fact that the business was carried on by the surviving partner with the knowledge and consent of Lehman and the accountant, and that the latter was frequently present about the brewery giving directions and advising and sometimes keeping the books and having them examined, and generally keeping himself acquainted with the run of the business.   There does not appear to have been any distinct agreement for the continuance of the business nor any actual participation by the accountant in the purchasing of stock, in the sale of the products, or in the receipt of the proceeds.   The auditor investigated the business of the firm and exhibits a summary of it which, in his mode of presenting the figures shows, that during the time it was carried on by the surviving partner it yielded a profit of $4744.84.   To this sum he adds the " cash in bank, as per inventory," $300, and " book accounts good, as per inventory," $617.82, and thus makes a gross amount of assets of $5662.66.   From this he deducts the amount of firm debts as they existed at the death of Solomon Stern, which were paid by Worst during the continuance of the business by him, $3958.45, leaving a balance of assets over debts paid, of $1704.21. He then states an account between the firm and Lehman, the only remaining creditor, giving him credit for his original loan and interest to April 9th 1875, in all $3695.   From this he deducts the proceeds of the personal estate of the firm sold under Lehman's execution, $353, and also the proceeds of the sale of the real estate held by the partners as tenants in common, also sold under Lehman's execution, $1008.77.   He thus arrives at a balance which the firm still owed Lehman $1681.98.   Upon some principle which is not clearly stated, and which it is difficult to understand, he decides that this accountant, Joseph Stern, should personally pay Lehman this amount still due him, and therefore he proposes to surcharge him with it as administrator.   But he concludes that as Lehman has been somewhat to blame, and as it is rather hard to make the accountant pay the whole of Lehman's debt, he, the accountant, shall be permitted to keep $825 which he received from the sale of certain real estate of the decedent, under an order of the Orphans' Court, but which was not embraced in the account submitted to the auditor, and therefore concludes that the accountant shall pay Lehman $856.98.   This is a very extraordinary mode of dealing with an administrator's account.   The auditor seems to treat the case as if it were a common-law action between Lehman and Joseph Stern, and he practically concludes it by rendering a judgment in Lehman's favor against Stern for a fixed sum.   The court undertook to correct this manifest error by striking out the distribution, but retained the whole of the surcharge directing the accountant to be surcharged with the sum of $856.98, as presently

payable, and that he account in the future for the $825. The learned judge does not seem to have investigated the details of the auditor's work, but rather to have assumed that it was correctly done. In this we are of opinion there was grave error. The auditor's report does not exhibit clearly the principles or reasons upon which the surcharge is founded. He does, however, find certain facts which, in our judgment, plainly show that there ought to be no surcharge whatever for any cause stated in the report. He finds that the firm was, in point of fact, insolvent at the death of Solomon Stern, their indebtedness at that time being $6804.40. He also finds that the assets of the firm were then of the value of $4212.15, but as $3504.32 of this sum consisted of the estimated value of certain hops, malt and utensils used in the manufacture of beer, it is manifest that no reliance can be placed upon these figures as the true representative in cash value of the firm's assets. The gross item also embraced $334.80 of book accounts which subsequently proved to be worthless. But even at the auditor's estimate of the value of the assets, he still finds the firm insolvent at the death of Solomon Stern to the amount of about $2600. The implements and utensils were subsequently sold at sheriff's sale for $372.50, showing a large additional deficiency. Now, the auditor further finds that the decedent had no personal property at the time of his death except his interest in this firm. But this, as we have seen, instead of being an asset, was, in reality, a debit. The auditor further finds that while Philip Worst, the surviving partner, carried on the business, he made money for the firm and paid off all its debts except the one to Lehman, and that was largely reduced by the value of the firm's assets still remaining and sold at sheriff's sale. In point of fact, therefore, the estate of Solomon Stern was benefited and not injured by the continuance of the business after his death. It thus appears that this accountant never adventured and lost in business any estate, personal or real, of the decedent; that no money was lost by the conduct of the business after Solomon Stern's death, and it is not shown that the accountant ever failed to collect any money or property which by any kind of proceeding or in any kind of right, legal or equitable, he could have collected. In this plain and entirely undisputed state of facts, it is perceived at once that there is an utter absence of any element of surcharge. The only reason the auditor seems to give for surcharging the accountant is that there is a balance of $1704.21 in the hands of Worst unaccounted for. He finds as a fact that the accountant never had any of the firm money or is in any way responsible for this deficiency; and he finds further that Worst has nothing, so that no part of it could be collected from him. He admits that Worst drew out of the firm $1775.80, and it must be admitted that this is quite a moderate sum to be used in supporting a man and his family for

[Stern's Appeal.]

three years.   The auditor says the accountant could have enjoined Worst from using any of the money and closed up the business, but he fails entirely to show that if this course had been adopted, Solomon Stern's estate could or would have been in any degree benefited.   But it is useless to prolong the discussion.   There is no reason for surcharging Joseph Stern with any part of the sum of $1681.98 now or in the future, and it must, therefore, be stricken from the account.   The auditor was also in error in refusing to allow the accountant credit for the sums paid for expenses of the administration, to wit, J. W. Shaw, register, $4.25; register for examining, &c., former account, $11; C. Heydrick, stating account, $10; register for examining this account, $11.   We see no reason why the accountant should not be allowed his charge for services, $100.   As to the other payments for which credit is claimed, as there is no testimony before us, we make no disposition of them. The account of the proceeds of the sale of the real estate is not before us, nor was it before the auditor, and no order can be made in reference to it.   This disposes of the assignments of error.

The decree of the court below is reversed, with direction to correct the account of the administrator by striking out the surcharge of $1681.98, and by allowing credit for the several items of expense of administration mentioned in this opinion, and for the item of $100 for services, and the record is remitted for further proceedings. The costs of this appeal to be paid by the appellee.

Subsequently, the decree was amended as follows :—

Now, January 31st 1881, the decree of this court made November 8th 1880, is amended by striking out all after the words, " The decree of the court below is reversed," and inserting in place thereof the following, to wit, " And it is now considered, adjudged and decreed that the auditor's report be set aside, the exceptions to the account dismissed, and the account confirmed, and that the costs of this appeal be paid by the appellee," and the record is remitted.

By the Court.